MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

*Lead Counsel for Amicus Curiae*
*Immigration Reform Law Institute*

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| M.S.E., on her own behalf and on behalf of her minor child, J.M., et al.,<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | Case No.: 2:22-cv-01242-PHX-SMM |

**MEMORANDUM OF LAW OF IMMIGRATION REFORM LAW INSTITUTE AS *AMICUS CURIAE* IN SUPPORT OF DEFENDANT'S MOTION TO DISMISS**

CHRISTOPHER J. HAJEC
MATT A. CRAPO
Immigration Law Reform Institute
25 Massachusetts Ave., NW, Ste. 335
Washington, DC  20001
Email: matt.crapo@pm.me

*On the Brief*

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ................................................................................................ ii

INTEREST OF *AMICUS CURIAE* ..................................................................................... 1

INTRODUCTION ................................................................................................................ 1

ARGUMENT ........................................................................................................................ 2

I.     Plaintiffs do not have a constitutional right to family unity while in immigration detention ................................................................................................................... 2

      A.     Plaintiffs had not effected entry into the United States when their alleged injuries occurred ........................................................................................ 2

      B.     Because Plaintiffs had not effected entry, their constitutional rights were limited to those afforded by Congress ...................................................... 4

II.     Even if Plaintiffs had effected entry, the family unification rights they assert are not be cognizable or actionable under the FTCA ..................................................... 5

CONCLUSION ..................................................................................................................... 7

# **TABLE OF AUTHORITIES**

**Page(s)**

**CASES**

*A.P.F. v. United States*,
  492 F. Supp. 3d 989 (D. Ariz. 2020) .................................................................. 6

*Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*,
  510 F.3d 1 (1st Cir. 2007) .................................................................................. 5

*Arita v. United States*,
  470 F. Supp. 3d 663 (S.D. Tex. 2020) ............................................................... 7

*Arizona Dream Act Coal. v. Brewer*,
  855 F.3d 957 (9th Cir. 2017) ............................................................................. 1

*Benitez v. Wallis*,
  337 F.3d 1289 (11th Cir. 2003) ......................................................................... 2

*Bridges v. Wixon*,
  326 U.S. 135 (1945) ........................................................................................... 4

*City of El Cenizo v. Texas*,
  890 F.3d 164 (5th Cir. 2018) ............................................................................. 1

*FDIC v. Meyer*,
  510 U.S. 471 (1994) ....................................................................................... 6, 7

*Flores v. Meese*,
  934 F.2d 991 (9th Cir. 1990) ............................................................................. 4

*Kaplan v. Tod*,
  267 U.S. 228 (1925) ........................................................................................... 2

*Kwong Hai Chew v. Colding*,
  344 U.S. 590 (1953) ........................................................................................... 4

*Leng May Ma v. Barber*,
  357 U.S. 185 (1958) ....................................................................................... 2, 4

*Matter of C-T-L-*,
  25 I. & N. Dec. 341 (B.I.A. 2010) ..................................................................... 1

*Matter of Silva-Trevino*,
    26 I. & N. Dec. 826 (B.I.A. 2016) .................................................................................. 1

*Nishimura Ekiu v. United States*,
    142 U.S. 651 (1892) ..................................................................................................... 2, 4

*Reno v. Flores*,
    507 U.S. 292 (1993) ........................................................................................................ 5

*Reyna as next friend of J.F.G. v. Hott*,
    921 F.3d 204 (4th Cir. 2019) ....................................................................................... 5, 6

*Save Jobs USA v. U.S. Dep't of Homeland Sec.*,
    942 F.3d 504 (D.C. Cir. 2019) ....................................................................................... 1

*Shaughnessy v. United States ex rel. Mezei*,
    345 U.S. 206 (1953) ....................................................................................................... 4

*Sidhu v. Ashcroft*,
    368 F.3d 1160 (9th Cir. 2004) ....................................................................................... 3

*Trump v. Hawaii*,
    138 S. Ct. 2392 (2018) ................................................................................................... 1

*United States v. Argueta-Rosales*,
    819 F.3d 1149 (9th Cir. 2016) ....................................................................................... 2

*United States v. Ju Toy*,
    198 U.S. 253 (1905) ....................................................................................................... 3

*United States v. Texas*,
    579 U.S. 547 (2016) ....................................................................................................... 1

*United States ex rel. Knauff v. Shaughnessy*,
    338 U.S. 537 (1950) ....................................................................................................... 4

*Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*,
    74 F. Supp. 3d 247 (D.D.C. 2014) ................................................................................ 1

*Wong Sang v. United States*,
    144 F. 968 (1st Cir. 1906) .............................................................................................. 2

*Zadvydas v. Davis*,
    533 U.S. 678 (2001) ............................................................................................. 2

**STATUTES**

8 U.S.C. § 1182(d)(5)(A) .......................................................................................... 6

8 U.S.C. § 1225(b)(1)(A)(i) ....................................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(ii) ...................................................................................... 5

8 U.S.C. § 1225(b)(1)(B)(iii)(IV) .............................................................................. 5

8 U.S.C. § 1225(b)(2)(A) ........................................................................................... 5

28 U.S.C. § 1346(b) ................................................................................................... 6

28 U.S.C. § 1346(b)(1) .............................................................................................. 2

**INTEREST OF *AMICUS CURIAE***

The Immigration Reform Law Institute ("IRLI") is a non-profit 501(c)(3) public interest law firm dedicated to litigating immigration-related cases on behalf of, and in the interests of, United States citizens, and also to assisting courts in understanding and accurately applying federal immigration law. IRLI has litigated or filed amicus curiae briefs in a wide variety of cases, including *Trump v. Hawaii*, 138 S. Ct. 2392 (2018); *United States v. Texas*, 579 U.S. 547 (2016); *City of El Cenizo v. Texas*, 890 F.3d 164 (5th Cir. 2018); *Arizona Dream Act Coal. v. Brewer*, 855 F.3d 957 (9th Cir. 2017); *Washington All. of Tech. Workers v. U.S. Dep't of Homeland Sec.*, 74 F. Supp. 3d 247 (D.D.C. 2014); *Save Jobs USA v. U.S. Dep't of Homeland Sec.*, 942 F.3d 504 (D.C. Cir. 2019); *Matter of Silva-Trevino*, 26 I. & N. Dec. 826 (B.I.A. 2016); and *Matter of C-T-L-*, 25 I. & N. Dec. 341 (B.I.A. 2010).

**INTRODUCTION**

In this case, Plaintiffs claim damages under the Federal Torts Claim Act ("FTCA") resulting from violations of their alleged constitutional right to family unity. To the extent that Plaintiffs assert a constitutional right of parents or children not to be separated while the parents are in immigration detention, their claim has no merit. It is a basic principle of immigration law that aliens who have not effected "entry" into the United States have not acquired rights under our Constitution. Because Plaintiffs did not effect an entry into the United States, their procedural rights are limited solely to those provided by Congress, and they have failed to point to any statutory rights they were denied.

In any event, even if Plaintiffs had made entry into the United States, their constitutional claim would fail because there is no constitutional right to family unity in immigration detention. Further, Plaintiffs' constitutional tort claims are not actionable under the FTCA. The FTCA only waives the government's sovereign immunity "under circumstances where the United States, if a private person, would be liable to the claimant."

28 U.S.C. § 1346(b)(1). Private individuals cannot, however, be liable for constitutional torts. Therefore, the FTCA does not waive immunity for such constitutional torts.

## ARGUMENT

### I. Plaintiffs do not have a constitutional right to family unity while in immigration detention.

#### A. Plaintiffs had not effected entry into the United States when their alleged injuries occurred.

"The distinction between an alien who has effected an entry into the United States and one who has never entered runs throughout immigration law." *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001).

> Any discussion of [Plaintiffs'] rights in the immigration context must also start with the fundamental difference in the legal status of (1) unadmitted aliens and (2) resident aliens who have effected "entry" into the United States, whether illegally or legally. This critical difference not only was recognized in *Zadvydas*, but has been a hallmark of immigration law for more than a hundred years.

*Benitez v. Wallis*, 337 F.3d 1289, 1296 (11th Cir. 2003).

"Entry" is a term of art that requires "physical presence in the United States" and "freedom from official restraint." *United States v. Argueta-Rosales*, 819 F.3d 1149, 1158 (9th Cir. 2016). It is longstanding principle that an alien detained at the border and held in custody has not effected an entry. *Nishimura Ekiu v. United States*, 142 U.S. 651, 661 (1892); *Leng May Ma v. Barber*, 357 U.S. 185, 188 (1958) ("[T]he detention of an alien in custody pending determination of his admissibility does not legally constitute an entry though the alien is physically within the United States.").

A women detained at Ellis Island for a year and then released to live with her father "was to be regarded as stopped at the boundary line and kept there unless and until her right to enter should be declared," even though she had been in the United State for a decade. *Kaplan v. Tod*, 267 U.S. 228, 230 (1925). "She was still in theory of law at the boundary line and had gained no foothold in the United States." *Id.*; *accord Wong Sang v. United States*, 144 F. 968, 970 (1st Cir. 1906) (citing *United States v. Ju Toy*, 198 U.S. 253, 263

2

(1905)). The Ninth Circuit defines entry as "(1) a crossing into the territorial limits of the United States, *i.e.*, physical presence; (2)(a) inspection and admission by an immigration officer, or (b) actual and intentional evasion of inspection at the nearest inspection point; and (3) freedom from official restraint." *Sidhu v. Ashcroft*, 368 F.3d 1160, 1163-64 (9th Cir. 2004) (adopting the Board of Immigration Appeals definition of "entry"); *see also Mariscal-Sandoval v. Ashcroft*, 370 F.3d 851, 856, (9th Cir. 2004) (holding that an alien who "was never inspected and admitted in the usual manner by an immigration officer, nor … actually succeed in evading inspection at the border" had not made an entry into the United States).

Here, no Plaintiff made any attempt to evade border patrol; instead, Plaintiffs appear to have sought out their apprehension by immigration officials, which occurred soon after their crossing. Plaintiff M.S.E. and her fourteen-year-old son J.M. entered the United States near Yuma, Arizona, and turned themselves in to CBP officers. ECF Doc. 1 at ¶ 61. Plaintiff M.V.A. and her fourteen-year-old son B.E. entered the United States near the San Luis, Arizona, Port of Entry, where M.V.A. fell off the border wall while crossing and badly injured her ankle. *Id.* at ¶ 90. M.V.A. and B.E. waited by the wall to turn themselves in to immigration officers, who arrived about an hour later. *Id.* Plaintiff B.C.O. and his thirteen-year-old son M.A. were apprehended shortly after they entered the United States near the San Luis, Arizona, Port of Entry. *Id.* at ¶¶ 115-16. Plaintiff U.O.L. and his six-year-old son F.R. crossed the border into the United States near San Luis, Arizona, where they soon encountered immigration officers and turned themselves in. *Id.* at ¶ 135.

After being apprehended, all Plaintiffs were detained during the time in which their alleged constitutional deprivations occurred. No Plaintiff actually and intentionally evaded inspection. Instead, they sought out or welcomed it. Under the clear precedent of both the Supreme Court and this circuit, Plaintiffs had not effected entry.

### B. Because Plaintiffs had not effected entry, their constitutional rights were limited to those afforded by Congress.

Aliens who have effected entry into the United States enjoy "additional rights and privileges not extended to those . . . who are merely 'on the threshold of initial entry.'" *Leng May Ma v. Barber*, 357 U.S. 185, 187 (1958) (quoting *Shaughnessy v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953)). Accordingly, "[t]he Bill of Rights is a futile authority for the alien seeking admission for the first time to these shores." *Bridges v. Wixon*, 326 U.S. 135, 161 (1945) (Murphy, J., concurring), *quoted with approval in Kwong Hai Chew v. Colding*, 344 U.S. 590, 596 n.5 (1953).

"Whatever the procedure authorized by Congress is, it is due process as far as an alien denied entry is concerned." *United States ex rel. Knauff v. Shaughnessy*, 338 U.S. 537, 544 (1950).

> It is not within the province of the judiciary to order that foreigners who have never been naturalized, nor acquired any domicil or residence within the United States, nor even been admitted into the country pursuant to law, shall be permitted to enter, in opposition to the constitutional and lawful measures of the legislative and executive branches of the national government. As to such persons, the decisions of executive or administrative officers, acting within powers expressly conferred by Congress, are due process of law.

*Nishimura Ekiu v. United States*, 142 U.S. 651, 660 (1892).

Here, Plaintiffs claims are based on allege violations of their procedural and substantive due process rights (including the right to family integrity). But Plaintiffs never allege that they were deprived of procedural protections afforded by Congress, and they have no further, constitutional procedural due process rights. Much less do Plaintiffs have the substantive due process right to family unity they assert under the Fifth Amendment. *See*, *a fortiori*, *Flores v. Meese*, 934 F.2d 991, 1004 (9th Cir. 1990) ("The plenary power of Congress and the narrowness of judicial review in the immigration context is reflected in the Supreme Court's teaching that any substantive due process rights aliens might have are extremely limited."), *and cases cited therein*.

In short, because Plaintiffs had not even entered the country, all of their constitutional claims must fail.

4

**II.     Even if Plaintiffs had effected entry, the family unification rights they assert are not be cognizable or actionable under the FTCA.**

Even if Plaintiffs had effected entry to the United States, their central claim would face an additional insurmountable hurdle. Their claim is derived from their assertion that separating parents from their children in immigration detention is a violation of due process. ECF Doc. 1 ¶¶ 55 & n.87, 60. But, contrary to the decisions relied upon by Plaintiffs, *id.* at ¶ 55 & n.87, both the First and Fourth Circuits have explicitly rejected the proposition that there is such a due process right to family integrity. *See Aguilar v. U.S. Immigration & Customs Enf't Div. of the Dep't of Homeland Sec.*, 510 F.3d 1, 24 (1st Cir. 2007); *Reyna as next friend of J.F.G. v. Hott*, 921 F.3d 204, 210-11 (4th Cir. 2019) ("[W]e…have been unable to find a substantive due process right to family unity in the context of immigration detention pending removal."). In *Aguilar*, the First Circuit reasoned that

> every [] detention of a parent, like every lawful arrest of a parent, runs the risk of interfering in some way with the parent's ability to care for his or her children. That a detention has an impact on the cohesiveness of a family unit is an inevitable concomitant of the deprivation of liberty inherent in the detention itself. So long as the detention is lawful, that so-called deprivation of the right to family integrity does not violate the Constitution. . . . To rule otherwise would risk turning every lawful detention or arrest of a parent into a substantive due process claim.

510 F.3d at 22; *cf. Reno v. Flores*, 507 U.S. 292 (1993) (holding that an unaccompanied illegal alien minor does not have a due process right to be released to an adult).

In any event, even if Plaintiffs did possess a substantive right to family unity in immigration detention, such a claim would not be actionable under the FTCA. Congress has directed immigration officials to detain all inadmissible aliens pending either removal or adjudication of any asylum claim. 8 U.S.C. § 1225(b)(1)(A)(i), (B)(ii), (iii)(IV), (b)(2)(A) (authorizing the detention of aliens pending removal or adjudication of asylum claims). As an alternative to detention, Congress has also authorized the Secretary of Homeland Security to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or

significant public benefit any alien applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Further, as the government points out (ECF Doc. 21 at 5), under the Flores Agreement, the government must expeditiously transfer any minor who cannot be released from custody to a non-secure, licensed facility. Thus, as the government argues (ECF Doc. 21 at 12-22), the decision to detain Plaintiff-Parents and transfer their children to a non-secure licensed facility falls within the discretionary function exception (DFE) to the FTCA.

The cases upon which Plaintiffs rely (ECF Doc. 1 at ¶ 55, n.87) hold that family separation in immigration detention likely violates a substantive due process right to family integrity and that the DFE does not apply because immigration officials have no discretion to violate the Constitution. *See, e.g.*, *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020) ("Because government officials lack discretion to violate the Constitution, the discretionary function exception cannot shield conduct related to the government's likely unconstitutional separation of plaintiffs."). Putting aside that as recently as 2019 (that is, after Plaintiffs in this case were detained and separated) the Fourth Circuit was unable to find a substantive due process right to family unity in the context of immigration detention pending removal, *see Reyna*, 921 F.3d at 210-11, the fact that Plaintiffs claims constitute constitutional torts renders them not cognizable under the FTCA.

To be actionable under the FTCA, a claim must allege, *inter alia*, that the United States "would be liable to the claimant" as "a private person" "in accordance with the law of the place where the act or omission occurred." 28 U.S.C. § 1346(b). The Supreme Court has "consistently held that § 1346(b)'s reference to the 'law of the place' means law of the State—the source of substantive liability under the FTCA." *FDIC v. Meyer*, 510 U.S. 471, 478 (1994). A constitutional tort claims such as Plaintiffs could not contain such an allegation because "[b]y definition, federal law, not state law, provides the source of liability for a claim alleging the deprivation of a federal constitutional right." *Id.* "Private individuals cannot be liable for constitutional torts, and constitutional tort claims are not actionable under the FTCA." *Arita v. United States*, 470 F. Supp. 3d 663, 688 (S.D. Tex.

2020) (citing *FDIC v. Meyer*, 510 U.S. at 478). Accordingly, to the extent Plaintiffs attempt to bring a constitutional tort claim against the United States under the FTCA, such a claim is not cognizable.

## CONCLUSION

For the foregoing reasons, Plaintiffs' claims should be dismissed.

Respectfully submitted, this 11th day of January, 2023.

/s/ *Michael Ryan Williams*
MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

CHRISTOPHER J. HAJEC
MATT A. CRAPO
Immigration Law Reform Institute
25 Massachusetts Ave., NW, Ste. 335
Washington, DC 20001
(202) 232-5590
chajec@irli.org
matt.crapo@pm.me

*Counsel for Amicus Curiae*
*Immigration Reform Law Institute*

**CERTIFICATE OF COMPLIANCE**

1.   This brief has been prepared using 13-point, proportionally spaced type space in Microsoft Word pursuant to L.R.Civ. 7.1(b).

2.   This brief complies with L.R.Civ. 7.2(e) because it is fewer than 17 pages in length.

Dated this 11th day of January, 2023.

/s/ Michael Ryan Williams
MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

*Lead Counsel for Amicus Curiae*
*Immigration Reform Law Institute*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 11th day of January, 2023, I electronically filed the foregoing motion—together with the accompanying Corporate Disclosure Statement, Proposed Order, and Memorandum of Law—with the Clerk using the CM/ECF system, which I understand to have served the parties' counsel who are registered in as CM/ECF users.

/s/ Michael Ryan Williams
MICHAEL RYAN WILLIAMS, ESQ.
3636 North Central Avenue
Phoenix, Arizona 85012
State Bar No. 029703
m.ryan.williams@gmail.com
(602) 740-0321

*Lead Counsel for Amicus Curiae*
*Immigration Reform Law Institute*