Gary Bendinger (036251)
Katie Derrig (037110)
Allison Whitehill (036339)
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
Tel: (602) 262-5311
Fax: (602) 262-5747
gbendinger@lewisroca.com
awhitehill@lewisroca.com
kderrig@lewisroca.com

Justin W. Bernick*
Danielle Desaulniers Stempel*
Michael J. West*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
justin.bernick@hoganlovells.com
danielle.stempel@hoganlovells.com
michael.west@hoganlovells.com

(*Additional Counsel for Plaintiffs Listed on the Following Page*)

(*Admitted pro hac vice*)

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| M.S.E., on her own behalf and on behalf of her minor child, J.M.; M.V.A., on her own behalf and on behalf of her minor child, B.E.; B.C.O., on his own behalf and on behalf of his minor child, M.A.; and U.O.L., on his own behalf and on behalf of his minor child, F.R.<br><br>Plaintiffs,<br><br>v.<br><br>United States of America,<br><br>Defendant. | No. CV 22-01242-PHX-SMM<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT'S MOTION TO DISMISS**<br>**(Oral Argument Requested)** |

Dana A. Raphael*
Melissa Giangrande*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004
Tel: (202) 637-5600
Fax: (202) 637-5910
dana.raphael@hoganlovells.com
melissa.giangrande@hoganlovells.com

Cory Szczepanik*
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202
Tel: (303) 899-7300
Fax: (303) 899-7333
cory.szczepanik@hoganlovells.com

Tamara F. Goodlette*
Vanessa Rivas-Bernardy*
REFUGEE AND IMMIGRANT CENTER
FOR EDUCATION AND LEGAL SERVICES (RAICES)
5121 Crestway Drive, Suite 105
San Antonio, TX 78239
Tel: 210-538-7382
tami.goodlette@raicestexas.org
vanessa.rivas@raicestexas.org

(*Admitted pro hac vice)

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ...................................................................................... i

TABLE OF AUTHORITIES.............................................................................. iii

INTRODUCTION ............................................................................................. 1

BACKGROUND ............................................................................................... 2

    A.    The Family Separation Policy ........................................................ 2

    B.    The Separations At Issue Here ....................................................... 4

STANDARD OF REVIEW ................................................................................ 5

ARGUMENT ..................................................................................................... 6

I.     The Discretionary Function Exception Does Not Apply Here. ............... 6

    A.    Defendant's Conduct Was Not Discretionary. ............................... 6

    B.    Defendant's Conduct Did Not Implement Social, Economic, Or Political Policy Considerations. ................................................ 11

II.    The Due Care Exception Does Not Apply Here. ................................... 18

III.   Plaintiffs' Tort Claims Satisfy The Private-Person-Analogue Inquiry. ................ 22

IV.   The Complaint Does Not Allege Systemic Tort Claims. ....................... 25

V.    Plaintiffs Are Not Seeking Relief Against Independent Contractors...................... 26

CONCLUSION ............................................................................................... 27

i

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**CASES:**

4

*A.E.S.E. v. United States*,

5

No. 21-CV-0569 RB-GBW, 2022 WL 4289930 (D.N.M. Sept. 16, 2022) ............ 17, 19

6

*A.F.P. v. United States*,

7

No. 1:21-CV-00780-DAD-EPG, 2022 WL 2704570 (E.D. Cal. July 12, 2022) ....*passim*

8

*A.I.I.L. v. Sessions*,

9

No. CV-19-00481-TUC-JCH, 2022 WL 992543 (D. Ariz. Mar. 31, 2022) ..........*passim*

10

*A.P.F. v. United States*,

11

492 F. Supp. 3d 989 (D. Ariz. 2020).......................................................................*passim*

12

*Aguilar v. U.S. I.C.E.*,

13

510 F.3d 1 (1st Cir. 2007) ..................................................................................................9

14

*Antonelli v. Crow*,

15

No. CIV. 08-261-GFVT, 2012 WL 4215024 (E.D. Ky. Sept. 19, 2012)......................16

16

*B.A.D.J. v. United States*,

17

No. CV-21-00215-PHX-SMB, 2022 WL 11631016 (D. Ariz. Sept. 30, 2022)......*passim*

18

*Berkovitz v. United States*,

19

486 U.S. 531 (1988) ...............................................................................6, 10, 11, 12

20

*Bhuiyan v. United States*,

21

772 F. App'x 564 (9th Cir. 2019)...................................................................................25

22

*Bickler v. Senior Lifestyle Corp.*,

23

No. CV09-00726-PHX-DGC, 2010 WL 2292985 (D. Ariz. June 8, 2010)...................23

24

*Borquez v. United States*,

25

773 F.2d 1050 (9th Cir. 1985).......................................................................................22

26

*Bryan v. United States*,

27

913 F.3d 356 (3d Cir. 2019) ..........................................................................................10

28

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Bultema v. United States*,

  359 F.3d 379 (6th Cir. 2004) ................................................................. 16, 17

*Bunikyte v. Chertoff*,

  No. A-07-CA-164-SS, 2007 WL 1074070 (W.D. Tex. Apr. 9, 2007) .......................... 20

*Butz v. Economou*,

  438 U.S. 478 (1978) ............................................................................. 10

*C.M. v. United States*,

  No. CV-19-05217-PHX-SRB, 2020 WL 1698191 (D. Ariz. Mar. 30, 2020) ......... *passim*

*Campos v. United States*,

  888 F.3d 724 (5th Cir. 2018) ..................................................................... 16

*Cope v. Scott*,

  45 F.3d 445 (D.C. Cir. 1995) ..................................................................... 11

*Cosby v. U.S. Marshals Serv.*,

  520 F. App'x 819 (11th Cir. 2013) ............................................................... 16

*D.J.C.V. v. U.S. I.C.E.*,

  No. 18 Civ. 9115 (AKH), 2018 WL 10436675 (S.D.N.Y. Oct. 15, 2018) ............... 12

*Dugard v. United States*,

  835 F.3d 915 (9th Cir. 2016) ..................................................................... 22

*E.S.M. v. United States*,

  No. CV-21-00029-TUC-JAS, 2022 WL 11729644 (D. Ariz. Oct. 20, 2022) ......... *passim*

*Edison v. United States*,

  822 F.3d 510 (9th Cir. 2016) ..................................................................... 27

*Elgamal v. Bernacke*,

  714 F. App'x 741 (9th Cir. 2018) ............................................................... 24

*Elgamal v. United States*,

  No. 13-00967, 2015 WL 13648070 (D. Ariz. July 8, 2015) ......................... 24, 25

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Estate of Smith v. Shartle*,

  No. CV-18-00323-TUC-RCC, 2020 WL 1158552 (D. Ariz. Mar. 10, 2020)...............23

*F.R. v. United States*,

  No. CV-21-00339-PHX-DLR, 2022 WL 2905040 (D. Ariz. July 22, 2022).........*passim*

*Firebaugh Canal Water Dist. v. United States*,

  712 F.3d 1296 (9th Cir. 2013) ......................................................................................22

*Fuentes-Ortega v. United States*,

  No. CV-22-00449, 2022 WL 16924223 (D. Ariz. Nov. 14, 2022) ........................*passim*

*Galvin v. Hay*,

  374 F.3d 739 (9th Cir. 2004) ..........................................................................................7

*Gasho v. United States*,

  39 F.3d 1420 (9th Cir. 1994) ..........................................................................................6

*Harlow v. Fitzgerald*,

  457 U.S. 800 (1982) ......................................................................................................10

*Hatahley v. United States*,

  351 U.S. 173 (1956) ................................................................................................20, 21

*Hilao v. Est. of Marcos*,

  103 F.3d 767 (9th Cir. 1996) ........................................................................................23

*Hydrogen Tech. Corp. v. United States*,

  831 F.2d 1155 (1st Cir. 1987) ......................................................................................21

*Indian Towing Co. v. United States*,

  350 U.S. 61 (1955) ..................................................................................................22, 24

*J.S.R. by & through J.S.G. v. Sessions*,

  330 F. Supp. 3d 731 (D. Conn. 2018) ............................................................................8

*Jacinto-Castanon de Nolasco v. U.S. I.C.E.*,

  319 F. Supp. 3d 491 (D.D.C. 2018) ..................................................................14, 15, 20

iv

1          **TABLE OF AUTHORITIES—Continued**

2                                                                                    **Page(s)**

3    *K.O. by & through E.O. v. United States*,

4        No. CV 4:20-12015-TSH, 2023 WL 131411 (D. Mass. Jan. 9, 2023) ............................ 9

5    *LaBarge v. Mariposa Cty.*,

6        798 F.2d 364 (9th Cir. 1986) ......................................................................................... 22

7    *Lam v. United States*,

8        979 F.3d 665 (9th Cir. 2020) ........................................................................................... 6

9    *Lee v. United States*,

10       No. CV 19-08051, 2020 WL 6573258 (D. Ariz. Sept. 18, 2020) .................................. 25

11   *Lineberry v. United States*,

12       No. CIV A 3:08-CV-0597-G, 2009 WL 763052 (N.D. Tex. Mar. 23, 2009) ................ 16

13   *Liranzo v. United States*,

14       690 F.3d 78 (2d Cir. 2012) ............................................................................................. 24

15   *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*,

16       241 F.3d 1208 (9th Cir. 2001) ............................................................................. 12, 13, 14

17   *Martinez v. United States*,

18       No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562 (D. Ariz. July 10, 2018) ...... 23

19   *Mejia-Mejia v. U.S. I.C.E.*,

20       No. 18-1445 (PLF), 2019 WL 4707150 (D.D.C. Sept. 26, 2019) .................................. 13

21   *Mirmehdi v. United States*,

22       662 F.3d 1073 (9th Cir. 2011) ........................................................................................ 14

23   *Mirmehdi v. United States*,

24       689 F.3d 975 (9th Cir. 2012) .......................................................................................... 14

25   *Moher v. United States*,

26       875 F. Supp. 2d 739 (W.D. Mich. 2012) ........................................................................ 21

27   *Ms. L. v. U.S. I.C.E.*,

28       310 F. Supp. 3d 1133 (S.D. Cal. 2018) ...................................................................... 8, 15

**TABLE OF AUTHORITIES—Continued**

Page(s)

*Ms. L v. U.S. I.C.E.*,

   302 F. Supp. 3d 1149 (S.D. Cal. 2018) .................................................... 9, 13

*Myers & Myers, Inc. v. U.S. Postal Serv.*,

   527 F.2d 1252 (2d Cir. 1975) ....................................................................... 20

*Ngo v. INS*,

   192 F.3d 390 (3d Cir. 1999) ........................................................................... 8

*Nunez Euceda v. United States*,

   No. 2:20-CV-10793, 2021 WL 4895748 (C.D. Cal. Apr. 27, 2021) ............... 7, 8, 18, 19

*Nurse v. United States*,

   226 F.3d 996 (9th Cir. 2000) .................................................................. 6, 7, 9

*O'Toole v. United States*,

   295 F.3d 1029 (9th Cir. 2002) ...................................................................... 11

*Pankratz v. Willis*,

   744 P.2d 1182 (Ariz. Ct. App. 1987) ............................................................ 23

*Patel v. United States*,

   398 F. App'x 22 (5th Cir. 2010) .................................................................... 16

*Peña Arita v. United States*,

   470 F. Supp. 3d 663 (S.D. Tex. 2020) .............................................. 8, 14, 15

*Peterson v. Martinez*,

   No. 3:19-cv-01447-WHO, 2020 WL 999832 (N.D. Cal. Mar. 2, 2020) ........................ 16

*Prescott v. United States*,

   973 F.2d 696 (9th Cir. 1992) ........................................................................ 18

*Reyna as next friend of J.F.G. v. Hott*,

   921 F.3d 204 (4th Cir. 2019) .......................................................................... 9

*Ruiz v. United States*,

   No. 13-cv-1241 (KAM) (SMG), 2014 WL 4662241 (E.D.N.Y. Sept. 18, 2014) .... 13, 17

## TABLE OF AUTHORITIES—Continued

**Page(s)**

*Sabow v. United States,*

   93 F.3d 1445 (9th Cir. 1996) ................................................................................ 11, 13

*Safe Air for Everyone v. Meyer,*

   373 F.3d 1035 (9th Cir. 2004) ..................................................................................... 6

*Tekle v. United States,*

   511 F.3d 839 (9th Cir. 2007) ..................................................................................... 24

*Terbush v. United States,*

   516 F.3d 1125 (9th Cir. 2008) ............................................................................ 12, 14

*Tobar v. United States,*

   731 F.3d 938 (9th Cir. 2013) ..................................................................................... 10

*Tsolmon v. United States,*

   841 F.3d 378 (5th Cir. 2016) ..................................................................................... 14

*United States v. Gaubert,*

   499 U.S. 315 (1991) ................................................................................................... 11

*United States v. Olson,*

   546 U.S. 43 (2005) ..................................................................................................... 22

*Walding v. United States,*

   955 F. Supp. 2d 759 (W.D. Tex. 2013) ..................................................................... 27

*Washington v. Reno,*

   35 F.3d 1093 (6th Cir. 1994) ..................................................................................... 17

*Welch v. United States,*

   409 F.3d 646 (4th Cir. 2005) ..................................................................................... 18

*Whisnant v. United States,*

   400 F.3d 1177 (9th Cir. 2005) ............................................................................ 12, 17

*Wilbur P.G. v. United States,*

   No. 4:21-CV-04457-KAW, 2022 WL 3024319 (N.D. Cal. May 10, 2022) ...........*passim*

## <u>TABLE OF AUTHORITIES—Continued</u>

**Page(s)**

*Wolfe v. Strankman*,

    392 F.3d 358 (9th Cir. 2004) ........................................................... 6

*Wong v. United States*,

    373 F.3d 952 (9th Cir. 2004) ........................................................... 8

*Xue Lu v. Powell*,

    621 F.3d 944 (9th Cir. 2010) ......................................................... 24

*Young v. United States*,

    769 F.3d 1047 (9th Cir. 2014) ....................................................... 12

**STATUTES:**

6 U.S.C. § 279 ...................................................................................... 15

8 U.S.C. § 1232(b)(3) .................................................................... 19, 20

8 U.S.C. § 1325 .................................................................................... 13

28 U.S.C. § 2674 .................................................................................. 22

28 U.S.C. § 2680(a) .............................................................................. 18

**RULE:**

Fed. R. App. P. 29 .................................................................................. 8

viii

# INTRODUCTION

This case concerns what even the government now admits was a "human tragedy," Mot. 2: an unprecedented and unconstitutional government policy under which government officials forcibly separated parents from their children.  Plaintiffs are four sets of parents and children who were swept up into this nightmare.  Predictably, Plaintiffs suffered untold harm as a result.  Indeed, that harm was the point.  Plaintiffs now seek redress from the government under the Federal Tort Claims Act (FTCA).

Despite denouncing the Family Separation Policy, Defendant attempts to evade review by arguing that this Court lacks jurisdiction over Plaintiffs' claims.  Of the 11 district courts in this Circuit to adjudicate motions to dismiss in family-separation cases, not one has accepted the government's sweeping jurisdiction-stripping theories.  This Court should not be the first.

Defendant offers nearly identical recitations of those rejected arguments here, without bothering to cite—let alone meaningfully distinguish—the vast majority of those decisions.  As in each of those cases, none of Defendant's arguments warrant dismissal.

*First*, the discretionary function exception does not bar Plaintiffs' claims.  The government does not have discretion to violate the Constitution, and Plaintiffs plausibly alleged that government officials violated their constitutional rights to family integrity.  The Family Separation Policy was also mandatory, not discretionary.  Moreover, Defendant has failed to carry its burden of identifying how its decision to forcibly separate Plaintiffs is susceptible to legitimate policy analysis.

*Second*, the due care exception does not bar Plaintiffs' claims.  The due care exception applies only to conduct mandated by statute or regulation.  No statute or regulation required government officials to forcibly separate Plaintiffs from one another.  And even if it did, not even Defendant argues that those separations were marked by the baseline concern for the rights of others that the due care exception requires.

*Third*, the private-person-analogue requirement does not bar Plaintiffs' claims.  The private-person-analogue inquiry requires a reasonable analogy to a case where a private

person would be liable in the same manner and to the same extent for the claims at issue. Courts in this District have universally held that the claims at issue here have reasonable private analogues under like circumstances.

*Fourth*, the Complaint does not allege a systemic tort.  Plaintiffs are not bringing systemic claims against the entire federal government or some agency thereof; they allege wrongdoing by specific government officials.

*Finally*, the Complaint does not seek relief against independent contractors. Plaintiffs challenge government officers' conduct in exposing Plaintiff-Children to abuse in government custody.  Plaintiffs' claims thus sound in the FTCA's heartland.

At bottom, Defendant's motion mischaracterizes the facts and ignores the law.  It refuses to treat the Family Separation Policy for what Plaintiffs alleged it to be: an unconstitutional executive policy mandating the forcible separation of parents from their children. It downplays the significant harm Plaintiffs suffered, noting dismissively that they were reunited "[w]ithin weeks" of their separations.  Mot. 2.  It distorts the Complaint into making claims it never made.  It closes its eyes to the mountain of case law blocking its arguments at every turn.  It invites this Court to apply rejected standards, and most of the cases it relies upon are irrelevant.

This Court should do what every district court in this Circuit to be presented with a motion to dismiss like this one has done:  Deny it.

**BACKGROUND**

**A.     The Family Separation Policy**

The Family Separation Policy was, as the government now admits, a "human tragedy."  Mot. 10.  That Policy traces back to the spring of 2017, when Department of Homeland Security (DHS) officials announced that DHS was considering separating parents from their children upon arrival at the southern border to intimidate or stop others from exercising their legal right to seek asylum in the United States.  Compl. ¶ 23.  Months later, the government launched a family separation pilot program.  *Id.* ¶ 24.  Under this program, government officials aggressively prosecuted parents who crossed the border with

2

children, detained the parents, and forcibly separated the parents and children.  *Id.* ¶ 25.
The pilot program ended in November 2017, after separating 281 individuals and exposing
them to, in one official's words, "harsh circumstances."  *Id.* ¶¶ 27-28.

Soon thereafter, senior officials at the Department of Justice (DOJ) and DHS
exchanged a draft memorandum titled "Policy Options to Respond to Border Surge of
Illegal Immigration."  *Id.* ¶ 30.  Two of those options were "Increased Prosecution of Family
Unit Parents" and "Separate Family Units."  *Id.*  Under the proposed prosecution policy,
"parents would be prosecuted for illegal entry . . . and the minors present with them would
be placed in HHS custody as [unaccompanied alien children]."  *Id.*  The memorandum
recommended publicly announcing the policies to ensure that they had the hoped-for
"substantial deterrent effect."  *Id.*

In April 2018, then-Attorney General Jeff Sessions announced a "zero-tolerance
policy" that extended the pilot program to the entire southern border.  *Id.* ¶ 31.  Under this
new policy, which came to be known as the "Family Separation Policy," "DOJ mandated
the criminal prosecution of *all* persons who crossed the United States border, regardless of
whether they were seeking asylum or arriving with children."  *Id.*  Shortly thereafter, then-
DHS Secretary Kirstjen Nielsen signed a DHS policy directing CBP to refer for prosecution
adults arriving in family units.  *Id.*  As Sessions explained in a speech around this time, "If
you cross this border unlawfully, then we will prosecute you.  It's that simple."  And if you
cross the border with a child, Sessions added, "then we will prosecute you and that child
will be separated from you."  *Id.*

High-level government officials admitted that the Family Separation Policy was a
"new policy" meant to deter migrants from seeking refuge in the United States.  *Id.* ¶ 37e.
To take just two examples, then-Chief of Staff John Kelly told reporters that "a big name
of the game is deterrence."  *Id.* ¶ 37c.  And Sessions told reporters that "hopefully people
will get the message and come through the border at the port of entry and not break across
the border unlawfully."  *Id.* ¶ 37d.  Government officials knew that this would cause severe
emotional harm to parents and children.  *Id.* ¶ 35.  Internal and external sources warned

repeatedly of the lasting harm that would result from family separations.  *Id.* ¶¶ 29, 35, 41.

But that trauma was the very point of the Family Separation Policy.  *Id.* ¶ 38.  Government

officials further compounded that trauma by actively working to prevent reunifications

because of concerns that reuniting families "too quickly" would undermine the Policy's

deterrent effect.  *Id.* ¶¶ 50-53.

Barely two months after Sessions announced the Family Separation Policy, a federal

court held that the Policy likely violated separated families' constitutional rights.  *Id.* ¶ 55.

Only after that court ordered the government to begin reuniting families did the

reunification process begin.  *Id.* ¶¶ 55-56.  But because HHS and DHS "did not routinely

collect and share the information necessary to identify, track, or connect families separated

by DHS," reunification was chaotic to say the least.  *Id.* ¶ 56.  Many children were even

"lost in the system."  *Id.* ¶ 57.

### B.    The Separations At Issue Here

In May and June 2018, government officials apprehended Plaintiffs at the southern

border and took them to the Yuma Border Patrol Station.  *Id.* ¶¶ 61-62, 90-91, 115-116,

135-136.  Officers detained Plaintiffs in cruel and inhumane conditions.  Plaintiffs were

packed into cells with dozens of other people.  *Id.* ¶¶ 62, 91, 92, 118, 137.  They were given

no clean water to drink.  *Id.* ¶¶ 62, 92, 118.  For food, they were given cold soup or dry

ramen noodles.  *Id.* ¶¶ 62, 92, 118, 137.  Their cells were kept at frigid temperatures, and

they were given only aluminum blankets to stay warm.  *Id.* ¶¶ 62, 91, 118, 137.  Officers

taunted them when they asked for water or complained about the cold.  *Id.* ¶¶ 92, 137.

These inhumane conditions paled in comparison to what came next:  Government

officers forcibly separated each parent from their child.  *Id.* ¶¶ 65, 93, 120, 138.  These

children ranged in age from six to fourteen.  *Id.* ¶¶ 135, 61, 90, 115.  They would not see

their parents again for one-to-two months.  *Id.* ¶¶ 65, 80, 93, 107, 120, 129, 138, 150.

The manner in which officers separated Plaintiffs was particularly cruel and

inhumane.  Officers told M.S.E. that her son J.M. would be put up for adoption.  *Id.* ¶ 67.

Officers took B.E. from the border station in the middle of the night; it took four days for

his mother M.V.A. to learn that he was gone. *Id.* ¶ 93. Officers led M.A. out of the border station while his father B.C.O. was signing paperwork; like M.V.A. and B.E., officers did not even give them the chance to say goodbye to one another. *Id.* ¶¶ 119-121. Officers did give U.O.L. a few minutes to say goodbye to his six-year-old son F.R. *Id.* ¶ 138. But when F.R., sobbing uncontrollably, wrapped himself around his father's leg, officers cut the farewell short: They grabbed the six-year-old's hands and pried him off his father. *Id.*

After separating the children from their parents, officers processed the children as unaccompanied minors and sent them to various shelters scattered across the United States. *Id.* ¶¶ 71, 93, 122; *see also* Mot. Ex. 1, De La Cruz Declaration, ¶ 15. The parents were then transferred from facility to facility, where they were again subjected to cruel and inhumane conditions. Compl. ¶¶ 72-73, 76, 96-97, 123-124, 140-143. It took weeks, if not months, for the parents to learn where their children had been taken. *Id.* ¶¶ 71, 79, 105, 127, 145. When M.S.E. and M.V.A. first asked where their children had been taken, officers told them to forget about their sons. *Id.* ¶¶ 67, 94. And when the parents were finally able to connect with their children—often with no help from government officers—officers provided only minimal opportunities for each parent and child to communicate. *Id.* ¶¶ 71, 74-79, 94, 102-105, 127-128.

Plaintiffs suffered considerably during their time apart. They experienced crippling anxiety, sadness, and depression; were too distressed to eat or sleep; and lived in constant fear that they would never see their loved ones again. *Id.* ¶¶ 84-86, 108-111, 131-134, 152-154, 156. And although the parents and children were eventually reunited, *id.* ¶¶ 106, 82, 129, 150, the trauma of their forced separations remains, *id.* ¶¶ 84, 87-89, 108, 112-114, 131-134, 152, 155, 157.

## STANDARD OF REVIEW

Where a defendant makes a facial attack on jurisdiction under Federal Rule of Civil Procedure 12(b)(1) by asserting "that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction," the court must accept as true all factual allegations in the complaint and draw all reasonable inferences in plaintiffs' favor.

*Wolfe v. Strankman*, 392 F.3d 358, 362 (9th Cir. 2004) (citation omitted).  To the extent a defendant raises a factual attack by disputing the truth of the allegations themselves, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).

**ARGUMENT**

Defendant admits that it "does not defend the merits of the" Family Separation Policy, and that its actions under that Policy created a far-reaching "human tragedy."  Mot. 11-12.  And Defendant acknowledges that courts adjudicating identical claims arising from that Policy have rejected the same "threshold jurisdictional arguments" it raises here.  *Id.* at 2.  Yet Defendant urges this Court to break from that conclusive body of precedent, and hold that it lacks jurisdiction to reach the merits of Plaintiffs' claims.  *See id.*  As the many courts to come before have held, Defendant's arguments are wrong.  This Court should join that growing consensus and deny the motion to dismiss.

**I.      The Discretionary Function Exception Does Not Apply Here.**

The discretionary function exception (DFE) does not bar Plaintiffs' FTCA claims against the United States.  The DFE only precludes FTCA claims where the challenged conduct (1) "involves an element of judgment or choice" and (2) "implements social, economic or political policy considerations."  *Nurse v. United States*, 226 F.3d 996, 1001 (9th Cir. 2000) (citing *Berkovitz v. United States*, 486 U.S. 531, 536 (1988); *Gasho v. United States*, 39 F.3d 1420, 1435 (9th Cir. 1994)).  The government bears the burden of proving that both prongs of the DFE apply.  *Lam v. United States*, 979 F.3d 665, 673 (9th Cir. 2020). Because Defendant cannot meet its burden on either prong, the Court should deny the motion to dismiss based on the DFE.

**A.      Defendant's Conduct Was Not Discretionary.**

Defendant cannot carry its burden to show that the first DFE prong applies, for two separate and independent reasons.  First, the government has no discretion to violate the Constitution, and Plaintiffs have plausibly alleged that Defendant's conduct violated their

6

constitutional rights.  Second, even if the challenged conduct was constitutional, the entire point of the Family Separation Policy was that it was not discretionary.  "Zero Tolerance" meant just that:  All parents would be designated as amenable for prosecution and referred for prosecution, all children would be designated as unaccompanied, and all families would be separated, without regard to their individual facts and circumstances.  *See* Mot. 6-7. Defendant's DFE argument thus fails prong one twice over.

1.  The DFE is inapplicable because Plaintiffs have sufficiently pled that separating them violated their constitutional rights to family integrity and due process.  As the Ninth Circuit has explained, "[f]ederal officials do not possess discretion to violate constitutional rights."  *Galvin v. Hay*, 374 F.3d 739, 758 (9th Cir. 2004) (citation omitted).  Thus, where the government's conduct is unconstitutional, "the discretionary function exception does not apply."  *Id.*; *accord, e.g.*, *Nurse*, 226 F.3d at 1002 n.2 ("[T]he Constitution can limit the discretion of federal officials such that the FTCA's discretionary function exception will not apply.").  At the motion-to-dismiss stage, as long as the plaintiff plausibly alleges that the government's conduct "may have been non-discretionary," the court "must" not dismiss the plaintiff's FTCA claims under the DFE.  *Nurse*, 226 F.3d at 1002.

*Every* district court in this Circuit to analyze the issue in a family-separation case has found that plaintiffs adequately pled unconstitutional conduct such that the DFE did not apply to their FTCA claims.  *Fuentes-Ortega v. United States*, No. CV-22-00449-PHX-DGC, 2022 WL 16924223, at *3 (D. Ariz. Nov. 14, 2022); *E.C.B. v. United States*, No. CV 22-00915 PHX CDB (D. Ariz. Nov. 8, 2022) (ECF No. 24); *E.S.M. v. United States*, No. CV-21-00029-TUC-JAS, 2022 WL 11729644, at *4-5 (D. Ariz. Oct. 20, 2022); *B.A.D.J. v. United States*, No. CV-21-00215-PHX-SMB, 2022 WL 11631016, at *2-3 (D. Ariz. Sept. 30, 2022); *F.R. v. United States*, No. CV-21-00339-PHX-DLR, 2022 WL 2905040, at *5 (D. Ariz. July 22, 2022); *A.F.P. v. United States*, No. 1:21-CV-00780-DAD-EPG, 2022 WL 2704570, at *11–14 (E.D. Cal. July 12, 2022); *Wilbur P.G. v. United States*, No. 4:21-CV-04457-KAW, 2022 WL 3024319, at *4-5 (N.D. Cal. May 10, 2022); *A.I.I.L. v. Sessions*, No. CV-19-00481-TUC-JCH, 2022 WL 992543, at *2 (D. Ariz. Mar. 31, 2022); *Nunez*

*Euceda v. United States*, No. 2:20-CV-10793-VAP-GJSx, 2021 WL 4895748, at *3 (C.D. Cal. Apr. 27, 2021); *A.P.F. v. United States*, 492 F. Supp. 3d 989, 996 (D. Ariz. 2020); *C.M. v. United States*, No. CV-19-05217-PHX-SRB, 2020 WL 1698191, at *4 (D. Ariz. Mar. 30, 2020).[1]

This case is no different.  Plaintiffs' Complaint plausibly alleges that Defendant's Family Separation Policy violated Plaintiffs' due process right to family integrity.  *E.g.,* Compl. ¶¶ 20, 46, 55, 60.  Indeed, in enjoining Defendant's Family Separation Policy, the *Ms. L* court held that separated families were not only likely to succeed on their due process claims—success was "assured."  *Ms. L. v. U.S. I.C.E. (Ms. L. II)*, 310 F. Supp. 3d 1133, 1145 (S.D. Cal. 2018); *see also J.S.R. by & through J.S.G. v. Sessions*, 330 F. Supp. 3d 731, 741 (D. Conn. 2018) (noting that the Government "agree[d] that a constitutional violation occurred when [it] separated children from their parents—both on the basis of substantive due process, as the separation deprived the children of their right to family integrity, and procedural due process, as [parent] and [child] were given no notice and no fair opportunity for a hearing before being separated from their parents.").[2]

---

[1] Plaintiffs are aware of only one case holding a family-separation claim was barred by the DFE: *Peña Arita v. United States*, 470 F. Supp. 3d 663, 686 (S.D. Tex. 2020).  That case is inapposite.  Unlike here, where the government bears the burden to show the DFE *does* apply, plaintiffs there bore the burden to show that the DFE *did not apply*.  *See infra* p. 14.  And unlike here, plaintiffs there did not argue that the Family Separation Policy was non-discretionary because the Policy was unconstitutional.  *Peña Arita*, 470 F. Supp. 3d at 686-687.  Plaintiffs instead argued that the "family separation policies were mandatory, not discretionary" without alleging a constitutional violation.  *Id.* at 686; *accord* Pls.' Response in Opp. to Def. United States of America's Mot. to Dismiss, *Peña Arita v. United States*, No. 19-cv-288, 2020 WL 2511295 (S.D. Tex. Jan. 10, 2020).

[2] In a filing offered 57 days after Defendant's motion, the Immigration Reform Law Institute (IRLI) argues that Plaintiffs' "constitutional claims must fail" because they have not legally entered the country and because there is no constitutional right to family integrity.  IRLI Amicus Br. 4-6, ECF No. 27-1; *compare* IRLI Mot. for Leave to File Amicus Br. 2, ECF No. 27 (invoking Fed. R. App. P. 29 to justify filing), *with* Fed. R. App. P. 29(a)(6) (setting deadline for amicus briefs at seven days after brief of party being supported).  These late-breaking arguments are meritless.

*First*, the "entry" theory is limited to "*procedural* rights"; it "does not preclude substantive constitutional protection," including substantive due process protections.  *Wong v. United States*, 373 F.3d 952, 973 (9th Cir. 2004); *see id.* at 972 (collecting cases from Third, Fifth, Sixth, and Tenth Circuits holding same).  "Even an excludable alien is a 'person' for purposes of the Fifth Amendment and is thus entitled to substantive due process."  *Ngo v. INS*, 192 F.3d 390, 396 (3d Cir. 1999).

That is enough to reject Defendant's attempt to avoid liability under the DFE. *See F.R.*, 2022 WL 2905040, at *5 (collecting cases). For example, in *Nurse*, the Ninth Circuit reversed the dismissal of a complaint under the DFE even though it could not yet determine "whether the acts of the policy-making defendants violated the Constitution, and, if so, what specific constitutional mandates they violated." 226 F.3d at 1002. As the Ninth Circuit explained, those questions should not be resolved at the motion-to-dismiss stage, but should be "fleshed out by the facts as this case proceeds toward trial." *Id.*

Defendant does not contest that the government lacks discretion to violate the Constitution. *See* Mot. 20. And Defendant acknowledges—as it must—that other district courts in this Circuit have rejected its DFE arguments under substantially similar circumstances. *Id.* at 22 n.3. Instead, relying on qualified immunity case law, Defendant implies that *every single court* that rejected a DFE argument in a family-separation case reached the wrong result because they all failed to import the "clearly established" standard from qualified immunity into the DFE analysis. *Id.* at 20-21.

Every district court in this Circuit to analyze DFE claims under similar circumstances has rejected that argument, too. As *F.R.* explained, applying a "plausibility" standard at the motion-to-dismiss stage is consistent with both Ninth Circuit precedent and the decisions of "other judges in this District." 2022 WL 2905040, at *5 (collecting cases); *see Nurse*, 226 F.3d at 1002 n.2 (declining to decide "the level of specificity with which a constitutional proscription must be articulated" under the DFE but allowing FTCA claim to

---

*Second*, neither of the two out-of-circuit cases IRLI cites supports its no-constitutional-right-to-family-integrity argument. *Aguilar v. U.S. I.C.E.* held that no such right exists where parents are detained but their children remain free. 510 F.3d 1, 24 (1st Cir. 2007). And *Aguilar* contemplates that a "viable [due process] claim[] might lie" where "a substantial number of young children [were] knowingly placed in harm's way." *Id.* at 22. IRLI's other case, *Reyna as next friend of J.F.G. v. Hott*, likewise involved a situation in which parents were detained, but their children were not. 921 F.3d 204, 206-207 (4th Cir. 2019). By contrast, parents separated under the Family Separation Policy "were detained *with their children.*" *Ms. L v. U.S. I.C.E.*, 302 F. Supp. 3d 1149, 1163 (S.D. Cal. 2018); *see K.O. by & through E.O. v. United States*, No. CV 4:20-12015-TSH, 2023 WL 131411, at *9 (D. Mass. Jan. 9, 2023) (in family-separation case, explaining *Reyna*'s constitutional analysis is "inappropriately narrow"). Unsurprisingly, no court in this District has held that plaintiffs in a family-separation case lack a right to family integrity. *See supra* pp. 7-8.

1    proceed at motion-to-dismiss stage where it was unclear whether a constitutional violation

2    had occurred).

3         Just as in *F.R.*, Defendant offers "no compelling reason for the Court to deviate

4    from" the many other cases to reject this argument.  2022 WL 2905040, at *5.  Indeed,

5    Defendant fails to cite a single case applying the clearly established standard to the DFE.

6    And the cases it does cite are readily distinguishable.  *Berkovitz* says that the DFE is

7    inapplicable when a certain action is "specifically *prescribe[d]*" such that it cannot "be the

8    product of judgment or choice."  486 U.S. at 536 (emphasis added).  It says nothing about

9    whether a plaintiff must plausibly allege that the Constitution "clearly establishes" a certain

10   *proscription* to survive a motion to dismiss.  *Butz v. Economou* addressed the DFE in dicta,

11   explaining that *if* executive officials were entitled to absolute immunity (a proposition it

12   rejected in the next sentence), that would gut the FTCA.  438 U.S. 478, 404 (1978).  And

13   the plaintiffs in *Bryan v. United States* did "not dispute that" the challenged actions "were

14   discretionary"; they argued only that the DFE should not apply because the defendants,

15   "through exercising their discretion, violated 'clearly established . . . constitutional

16   rights.'"  913 F.3d 356, 364 (3d Cir. 2019) (alteration in original; quoting *Harlow v.*

17   *Fitzgerald*, 457 U.S. 800, 818 (1982), which involved qualified immunity standard).

18        Plaintiffs have plausibly alleged that separating them violated their constitutional

19   rights to family integrity and due process.  Defendant's DFE argument accordingly fails.

20        2.  The DFE is also inapplicable here because government officials separated

21   Plaintiffs pursuant to a mandatory policy.  "[T]he discretionary function exception will not

22   apply when a federal statute, regulation, or policy specifically prescribes a course of action

23   for an employee to follow."  *Berkovitz*, 486 U.S. at 536; *see also Tobar v. United States*,

24   731 F.3d 938, 945 (9th Cir. 2013).  This makes sense:  "In this event, the employee has no

25   rightful option but to adhere to the directive.  And if the employee's conduct cannot

26   appropriately be the product of judgment or choice, then there is no discretion in the conduct

27   for the discretionary function exception to protect."  *Berkovitz*, 486 U.S. at 536.

28

The Family Separation Policy was "mandatory." Compl. ¶ 46. "As implemented, the Policy resulted in officials separating *all* parents from their children, even if the parents were not criminally prosecuted or in criminal custody." *Id.* ¶ 33. "The government designated *every* family unit adult who crossed the border between ports of entry as amenable for prosecution." *Id.*; *see also id.* at ¶ 31 ("Under the zero-tolerance policy, which came to be known as the 'Family Separation Policy,' DOJ mandated the criminal prosecution of *all* persons who crossed the United States border, regardless of whether they were seeking asylum or arriving with children."). The government officers who separated Plaintiffs from one another thus had "no rightful option but to adhere to" the mandatory Family Separation Policy. *Berkovitz*, 486 U.S. at 536. Whether or not Plaintiffs should be separated was not up to these officials' "judgment or choice," *id.*; the Family Separation Policy dictated the outcome. The DFE accordingly does not bar Plaintiffs' claims.

**B.   Defendant's Conduct Did Not Implement Social, Economic, Or Political Policy Considerations.**

Because Defendant cannot prove that the first DFE prong applies, this Court need not reach the second prong of the DFE analysis. Nonetheless, Defendant's arguments fail on this prong, too.

The DFE's second prong asks whether the challenged conduct involves the "kind of policy judgment that the [DFE] was designed to shield"—one involving "social, economic, or political policies." *United States v. Gaubert*, 499 U.S. 315, 332 (1991). This "policy rationale" must be "legitimate." *Sabow v. United States*, 93 F.3d 1445, 1454 (9th Cir. 1996). The policy rationale must also be "grounded" in the "statute, regulation, or agency guidelines" giving the "Government agent . . . discretion" over the matter in the first place. *Gaubert*, 499 U.S. at 323-325. " 'The mere association . . . with regulatory concerns,' however, is insufficient to trigger the discretionary function exception." *O'Toole v. United States*, 295 F.3d 1029, 1034 (9th Cir. 2002) (quoting *Cope v. Scott*, 45 F.3d 445, 449 (D.C. Cir. 1995)). Thus, "actions that are regulatory or 'uniquely governmental' in nature are not

automatically covered by the exception by virtue of that designation." *Whisnant v. United States*, 400 F.3d 1177, 1181 (9th Cir. 2005) (citing *Berkovitz*, 486 U.S. at 538-539).

Because "the Government has the burden of proving the [DFE] applies . . . [t]here must be reasonable support in the record for a court to find, without imposing its own conjecture, that a decision was policy-based or susceptible to policy analysis." *Marlys Bear Med. v. U.S. ex rel. Sec'y of Dep't of Interior*, 241 F.3d 1208, 1216 (9th Cir. 2001). "It is not sufficient for the government merely to [wave] the flag of policy as a cover for anything and everything it does that is discretionary in nature." *Terbush v. United States*, 516 F.3d 1125, 1134 (9th Cir. 2008).

1. Defendant has offered no legitimate social, economic, or political policy for separating Plaintiffs from one another, much less for the cruel and inhumane way in which it did so. Defendant instead attempts to divvy the Family Separation Policy into discrete, mechanical steps—referring the parents for prosecution, detaining the parents in adults-only facilities, and deeming the children "unaccompanied" under the Trafficking Victims Protection Reauthorization Act (TVRPA)—all of which it claims are grounded in seemingly legitimate policy rationales. This misconstrues Plaintiffs' Complaint, and the Court should reject Defendant's attempt to sanitize the Family Separation Policy in this way. *Cf. Young v. United States*, 769 F.3d 1047, 1054 (9th Cir. 2014) ("Our cases make clear that when determining whether the discretionary function exception applies in a particular case, 'the question of how the government is alleged to have been negligent is critical.'") (citation omitted). The Family Separation Policy was a "Zero Tolerance" mandate to systematically separate parents from their children. The question is whether that mandate was grounded in legitimate social, economic, or political policies or otherwise susceptible to legitimate policy analysis.

It was not. The "cruelty of . . . separation of a parent and child by the government" is justified only "in the most dreadful circumstances," such as when the parent is "unwilling or unfit" to care for the child. *D.J.C.V. v. U.S. I.C.E.*, No. 18 Civ. 9115 (AKH), 2018 WL 10436675, at *1 (S.D.N.Y. Oct. 15, 2018). There are no such "dreadful circumstances"

1   here.  *Id.*  Indeed, as the *Ms. L.* Court concluded, the Family Separation Policy was

2   "emblematic of the exercise of power without any reasonable justification in the service of

3   an otherwise legitimate governmental objective."  *Ms. L. v. U.S. I.C.E.*, 302 F. Supp. 3d

4   1149, 1167 (S.D. Cal. 2018) (citation omitted).

5          Other courts have reached the same conclusion in similar contexts.  For example, a

6   district court held that CBP officers' treatment of a minor was not "susceptible to policy

7   analysis" because the court could not "discern how deciding to wait fourteen hours before

8   contacting [the child's] parents and to only provide the child with a cookie and a soda over

9   twenty hours could constitute a considered judgment grounded in social, economic, or

10  political policies."  *Ruiz v. United States*, No. 13-cv-1241 (KAM) (SMG), 2014 WL

11  4662241, at *8 (E.D.N.Y. Sept. 18, 2014); *see also, e.g.*, *Sabow*, 93 F.3d at 1454 ("specific

12  acts" by military officers including "verbal abuse and a[ ] [retaliatory] investigation" did

13  not involve considerations of policy and were therefore not shielded by the exception).

14         Even taken at face value, Defendant's policy justifications are not legitimate or

15  grounded in the record.  *See Marlys Bear Med.*, 241 F.3d at 1216.  Contrary to Defendant's

16  claim (Mot. at 15), the government "was not enforcing federal law when it separated

17  Plaintiffs."  *C.M.*, 2020 WL 1698191, at *4; *see infra* p. 18.  And Defendant's repeated

18  citations to cases concerning "prosecutorial discretion," Mot. 16, ignores the fact that the

19  government never prosecuted Plaintiffs for a crime.[3]

20         Defendant also gestures vaguely at the Complaint, contending that it shows that "the

21  government spelled out the policies it sought to further through its enforcement efforts,"

22  Mot. 16 (citing Compl. ¶¶ 22-31).  These paragraphs discuss how government officials

23

---

24  [3] That likewise distinguishes *Mejia-Mejia v. U.S. I.C.E.*, No. 18-1445 (PLF), 2019 WL
    4707150 (D.D.C. Sept. 26, 2019), an out-of-circuit district court decision involving *Bivens*

25  claims against several federal officials for conduct related to the Family Separation Policy.
    In declining to extend *Bivens* to that situation, the court noted in passing that the Family

26  Separation Policy "rests, in part, on conduct that amounts to exercise of the prosecutorial
    discretion."  *Id.* at *5.  The court did not explain which "part" of the Policy rested on

27  prosecutorial discretion, but context demonstrates it was referring to the decision to *actually*
    prosecute individuals for illegal entry.  *Id.* (citing 8 U.S.C. § 1325, which sets "out penalties

28  for improper entry," and a section of the complaint "criticizing the government's decision
    to prosecute violations of" that provision).

1   hoped that the Family Separation Policy would deter illegal immigration.  But "nothing in

2   federal law suggests that deterring immigration by indefinitely separating families . . . is a

3   compelling or legitimate government objective."  *Jacinto-Castanon de Nolasco v. U.S.*

4   *I.C.E.*, 319 F. Supp. 3d 491, 501-502 (D.D.C. 2018).

5        Next, Defendant contends that the government's "decisions concerning where to

6   detain the parents were . . . susceptible to policy analysis."  Mot. 16.  For support, Defendant

7   cites a number of cases holding that the specific location where a noncitizen or prisoner is

8   detained is susceptible to policy analysis.  *Id.* at 16-17.  But the issue here is not whether a

9   particular Plaintiff should have been detained in Yuma or Florence.  It is whether Defendant

10  had a policy justification for systematically separating parents from their children—and

11  detaining them separately.  The Court should reject this argument as merely waving "the

12  flag of policy as a cover."  *Terbush*, 516 F.3d at 1134.[4]

13        *Peña Arita*, a case from the Southern District of Texas, is likewise inapposite.  *See*

14  Mot. 17.   In the Fifth Circuit, "the *plaintiff* has the burden of establishing that the

15  discretionary function exception *does not* apply."  *Peña Arita*, 470 F. Supp. 3d at 684

16  (quoting *Tsolmon v. United States*, 841 F.3d 378, 382 (5th Cir. 2016)) (emphases added).

17  In this Circuit, the *government* bears the burden of establishing that the exception *does*

18  apply.  *See Marlys Bear Med.*, 241 F.3d at 1216.  The shortcomings of the complaint in

19  *Peña Arita* thus have no bearing on this case.  Moreover, plaintiffs there argued that the

20  DFE was inapplicable only because the Family Separation Policy was mandatory under

21  prong one.  Pls.' Response in Opp. to Def. United States of America's Mot. to Dismiss,

22

23  [4] Defendant also points to a Ninth Circuit decision purportedly holding that "[b]ecause the
    decision to detain an alien pending resolution of immigration proceedings is explicitly
24  committed to the discretion of the Attorney General and implicates issues of foreign policy,
    it falls within this [FTCA] exception."  Mot. 17 (quoting *Mirmehdi v. United States*, 662
25  F.3d 1073, 1081-82 (9th Cir. 2011)).  Defendant has tried this gambit before—and failed.
    As another court recently explained, the "2011 opinion Defendant cites was amended and
26  superseded in 2012."  *E.S.M.*, 2022 WL 11728644, at *4.  "In the 2012 opinion, the Ninth
    Circuit included the same above-quoted language, but with" the "important caveat" that the
27  plaintiffs did not allege that the government's conduct violated the Constitution.  *Id.* (citing
    *Mirmehdi v. United States*, 689 F.3d 975 (9th Cir. 2012)).  Here, in contrast, Plaintiffs have
28  plausibly alleged constitutional violations.  *See supra* pp. 7-8.

*Peña Arita v. United States*, No. 19-cv-288, 2020 WL 2511295 (S.D. Tex. Jan. 10, 2020). They "d[id] not dispute the conclusion that the Attorney General's memorandum" enacting the Family Separation Policy "is an 'administration decisio[n] grounded in social, economic, and political policy' that th[e] Court is without jurisdiction to second-guess" under prong two. *Peña Arita*, 470 F. Supp. 3d at 687 (citation omitted).

Finally, Defendant erects a strawman by arguing that whether a child is unaccompanied under the TVPRA when their parent is "detained in secure adult immigration detention" is a policy question. Mot. 18. That is not what the Complaint alleges. Read in the light most favorable to Plaintiffs, the Complaint alleges that the government initially detained the parents and children together at the Yuma Border Patrol Station; separated the parents and children while both were still at the Yuma Border Patrol Station; designated the children as unaccompanied; and *then* transferred the parents to secure adult immigration centers—sometimes weeks later. *See* Compl. ¶¶ 62, 65, 69, 72, 91, 93-94, 96, 116, 119-120, 122, 125, 136, 138, 140. Defendant appears to concede as much when it claims that the fact that the parents "[i]n this case" were "*later* transferred to the custody of ICE" supports the *prior* decision to deem their children "unaccompanied." Mot. 18 (emphasis added). Not even Defendant argues that TVPRA authorized the government to separate children from their parents based on the supposition that the children might become unaccompanied. *See* 6 U.S.C. § 279.

Defendant's argument that Plaintiff-Children were deemed unaccompanied because their parents were "detained in secure adult immigration detention" also contradicts its earlier statement that some Plaintiff-Children were deemed unaccompanied because their parents were "referred for prosecution." Mot. 8, 18. And Defendant does not even try to explain how systematically deeming children "unaccompanied" for such a specious reason is susceptible to legitimate policy analysis—likely because it is not. *Cf. Ms. L. II*, 310 F. Supp. 3d at 1139 ("true 'unaccompanied alien children' " are those who arrive at the border without their parents, not those "detained with their parents at the border and who were thereafter separated from their parents"); *Jacinto-Castanon*, 319 F. Supp. 3d at 495 n.2

(children "rendered unaccompanied by the unilateral and likely unconstitutional actions of defendants" "are not true unaccompanied minors with the meaning of the" TVPRA).

2.   Defendant also argues that certain individual allegations are barred by the DFE. *See* Mot. 19-20 (singling out allegations of cruel conditions of confinement, of government officials "limit[ing] calls between the parents and children," and of officials "provid[ing] only limited information to the parents as to where the children had been placed"). These are not standalone claims. Rather, as courts in this District have recognized, they are "factual allegations primarily aimed at demonstrating the harm resulting from the separations." *A.P.F.*, 492 F. Supp. 3d at 996-997. They also show that officers acted with intent or recklessness and fell below their duty of care. At a minimum, these allegations provide context for assessing Plaintiffs' claims. *See, e.g.*, *Peterson v. Martinez*, No. 3:19-cv-01447-WHO, 2020 WL 999832, at *8 (N.D. Cal. Mar. 2, 2020) (inmate placement and management decisions "could be removed from the protection of the discretionary function exception" if those decisions were shown to be retaliatory or otherwise not policy driven). And like other family-separation complaints, Plaintiffs' Complaint "incorporates all facts into each count; evaluating which facts could or could not prove a claim [at the motion-to-dismiss stage] is premature." *A.P.F.*, 492 F. Supp. 3d at 996-997; *see also C.M.*, 2020 WL 1698191, at *4 (rejecting similar argument); *A.F.P.*, 2022 WL 2704570, at *13 (same).

In any event, conditions-of-confinement claims are not—as Defendant suggests—any different than other claims. Defendant's own cases reveal this. In each case, the Court applied the same fact- and policy-specific two-step analysis discussed above.[5] In fact, in *Bultema*—Defendant's lead-off case in its string cite—the Sixth Circuit held that the

---

[5] *See Bultema v. United States*, 359 F.3d 379, 385 (6th Cir. 2004) (prison bed-rail policy); *Campos v. United States*, 888 F.3d 724, 733 (5th Cir. 2018) (policy regarding whether Employment Authorization Document is proof of immigration status); *Cosby v. U.S. Marshals Serv.*, 520 F. App'x 819, 821 (11th Cir. 2013) (prison medical and transfer policies); *Patel v. United States*, 398 F. App'x 22, 28-29 (5th Cir. 2010) (same); *Antonelli v. Crow*, No. CIV. 08-261-GFVT, 2012 WL 4215024, at *3 (E.D. Ky. Sept. 19, 2012) (statute imposing on Bureau of Prisons "a general duty to provide for the safety and care of federal prisoners"); *Lineberry v. United States*, No. CIV A 3:08-CV-0597-G, 2009 WL 763052, at *6 (N.D. Tex. Mar. 23, 2009) (statute governing placement decisions for federal prisoners).

1   plaintiffs' claim that the defendants negligently carried out the relevant policy was *not*

2   barred by the DFE.  359 F.3d at 384-385.

3        *Bultema* accords with the Ninth Circuit's general rule that "judgments concerning

4   safety . . . are rarely considered to be susceptible to social, economic, or political policy."

5   *Whisnant*, 400 F.3d at 1181.  So even if Plaintiffs' conditions-of-confinement allegations

6   were stand-alone claims—and they are not—government officials' decision to implement

7   the Family Separation Policy in such a way as to threaten Plaintiffs' health and safety would

8   not be susceptible to legitimate policy analysis.  The Defendants' conspicuous failure to

9   offer even a single policy justification for that behavior shows that there is none.  *Cf. Ruiz*,

10   2014 WL 4662241, at *8 (DFE did not apply because the government "has not offered any

11   reason as to why the CBP Officers" manner of detaining a child was "justified by or

12   susceptible to policy analysis").

13        Defendant also points out that "courts have held that detained individuals have 'no

14   right to unlimited telephone use.' "  Mot. 19 (quoting *Washington v. Reno*, 35 F.3d 1093,

15   1100 (6th Cir. 1994)).  But even if Plaintiffs' allegation that government officials limited

16   telephone calls was a stand-alone claim—and, again, it is not—the question here would not

17   be one of right; it would be whether government officials' decision to limit contact between

18   parent and child implements legitimate social, economic, or political policies.  Once again,

19   Defendant does not argue that it does.  *Cf. A.E.S.E. v. United States*, No. 21-CV-0569 RB-

20   GBW, 2022 WL 4289930, at *12 (D.N.M. Sept. 16, 2022) ("[T]he Court is hard-pressed to

21   find how a policy grounded in the management of facilities justifies the refusal to allow

22   Plaintiffs to communicate for a month.").

23                *   *   *

24        Plaintiffs plausibly alleged that government officers violated their constitutional

25   rights, and that the Family Separation Policy was mandatory; the challenged conduct thus

26   was not discretionary.  And even if it was, Defendant fails to carry its burden of explaining

27   how systematically separating parents from their children was susceptible to legitimate

28   policy analysis.  The DFE does not bar Plaintiffs' claims.

## II.     The Due Care Exception Does Not Apply Here.

The due care exception does not bar Plaintiffs' claims, either.  *See* 28 U.S.C. § 2680(a) (precluding liability for "[a]ny claim based upon an act or omission of an employee of the Government, exercising due care, in the execution of a statute or regulation").  Courts in this circuit apply the two-prong test from "*Welch v. United States* to determine whether the due care exception applies."  *A.P.F.*, 492 F. Supp. 3d at 995; *see also, e.g.*, *B.A.D.J.*, 2022 WL 11631016, at *4 (collecting cases).  Under that test, the due care exception bars FTCA claims only if (1) a statute or regulation "specifically prescribes a course of action to be followed by" an officer and (2) "the officer exercised due care in following the dictates of that statute or regulation."  *Welch v. United States,* 409 F.3d 646, 652 (4th Cir. 2005).  "Otherwise stated, the due care exception applies only when an official was 'reasonably executing the mandates of' a statute or regulation."  *A.P.F.*, 492 F. Supp. 3d at 995.  The government bears the burden of proving that the due care exception applies.  *See Prescott v. United States*, 973 F.2d 696, 702 (9th Cir. 1992).

1. Defendant cites no statute or regulation requiring it to detain parents and children in separate facilities before it has prosecuted either for a crime.  That is because no such statute or regulation exists.  *See, e.g.*, *Nunez Euceda*, 2021 WL 4895748, at *4 ("Defendant fails to cite any statute or regulation that required Plaintiff and his children to be separated upon their arrival to the United States."); *accord, e.g.*, *A.I.I.L.*, 2022 WL 992543, at *5.  The government instead separated Plaintiffs according to an *executive policy*.  *See* Compl. ¶¶ 22-60; *see also, e.g.*, *C.M.,* 2020 WL 1698191, at *3 ("family separation was established by executive policy—not by a statute or regulation"); *B.A.D.J.*, 2022 WL 11631016, at *4 (similar); *A.P.F.*, 492 F. Supp. 3d at 996 (similar); *E.S.M.*, 2022 WL 11729644, at *5 (similar).  And as courts in this district have recognized, "[a]ctions taken pursuant to executive policy are not shielded by the due care exception."  *A.P.F.*, 492 F. Supp. 3d at 996; *see also, e.g.*, *C.M.*, 2020 WL 1698191, at *3 (same).

Because Defendant has not identified a statute or regulation requiring the conduct at issue, it has failed to carry its burden and the due care exception does not apply.  Nearly

every court in this District—as well as several others in this Circuit—has held as much. *See E.S.M.*, 2022 WL 11729644, at *5; *B.A.D.J.*, 2022 WL 11631016, at *4; *A.E.S.E.*, 2022 WL 4289930, at *13-14; *A.I.I.L.*, 2022 WL 992543, at *5; *A.P.F.*, 492 F. Supp. 3d at 996; *E.S.M.*, 2022 WL 11729644, at *5; *C.M.*, 2020 WL 1698191, at *3; *A.F.P.*, 2022 WL 2704570, at *15; *Wilbur P.G.*, 2022 WL 3024319, at *5; *Nunez Euceda*, 2021 WL 4895748, at *4.[6]

The only statute Defendant invokes is the TVPRA. Defendant contends that once it "made the discretionary decisions to detain the Plaintiff-Parents for potential criminal prosecution and immigration processing . . . in secure immigration detention facilities," the TVPRA "*required* that the Plaintiff-Children be transferred to ORR custody." Mot. 22-23 (emphasis added). Defendant is apparently arguing that, once it exercised its *discretion* to refer the Plaintiff-Parents for prosecution and designate the Plaintiff-Children as unaccompanied—an action Defendant claims is protected under the DFE—Defendant had *no choice* but to separate the families—meaning the separation itself is protected under the due care exception.

This whiplash-inducing argument fails twice over. First, as explained *supra* p. 12, attempting to sanitize the Family Separation Policy by slicing it into purportedly discrete actions ignores the broader picture and Plaintiffs' allegations. Second, and more fundamentally, the argument that the TVPRA *mandated* forcibly separating parents and children is the same pretextual theory the Trump Administration used to justify what the government now condemns as a "human tragedy" that it is "committed to not repeat." Mot. 12 (internal quotation marks omitted); *see* Compl. ¶ 33. And that theory is as perverse now as it was then: The TVPRA is meant to protect children, not harm them. Specifically, the TVPRA requires "any department or agency . . . that has an unaccompanied alien child in custody" to "transfer the custody of such child" to ORR within a certain timeframe. *See* 8

---

[6] The lone exception is *F.R.*, which held that the child's "transfer was mandated by the TVPRA." 2022 WL 2905040 at *4. But, as discussed *infra* pp. 19-20, the TVPRA does not mandate separating children from their parents. In any event, *F.R.* held that the government did not exercise due care under the second *Welch* prong. *Id.*

U.S.C. § 1232(b)(3). That statute does not require the government to treat as "unaccompanied" the children of parents who face "potential criminal prosecution and immigration processing." Mot. 22. Defendant does not explain how a parent who is merely amenable to prosecution but has not actually been prosecuted is, for that reason alone, unavailable to provide care for their child—perhaps because "Congress [has] rejected" using the TVPRA to "split[ ] up legitimate family groups." *Bunikyte v. Chertoff*, No. A-07-CA-164-SS, 2007 WL 1074070, *1-2 (W.D. Tex. Apr. 9, 2007); *see also supra* p. 15. Nor does the TVPRA require the government to transfer those parents "to the custody of ICE," or "detain them in secure immigration detention facilities," Mot. 22, apart from their children. *See Jacinto-Castanon de Nolasco,* 319 F. Supp. 3d at 501 ("[T]he fact that [a plaintiff-parent] may be subject to some form of immigration detention does not explain why she must be detained separately from her sons. The same goal of [immigration] detention can be accomplished, for example, by temporarily detaining families together in family residential facilities.").

Defendant's TVPRA theory is easily disproven. The government did not use the TVPRA to systematically separate families before the Family Separation Policy. And the government did not contend that the TVPRA prevented Plaintiffs' reunification, despite the fact that the parents remained amenable to prosecution. This makes crystal clear that the only thing mandating the separation of Plaintiffs was the Family Separation Policy. And that executive policy is what Plaintiffs are challenging, not the TVPRA. Other courts in this District have rejected the government's attempts to "recast" similar challenges as "challenge[s] to the government's interpretation of" the TVRPA. *A.P.F.*, 492 F. Supp. 3d at 995 n.3; *see also C.M.*, 2020 WL 1698191, at *3 n.4. This Court should do the same.

2. Even if Plaintiffs' separations were mandated by statute or regulation—and they were not—the due care exception would not apply under the second *Welch* prong because the government failed to act with "due care" in carrying out the separations. "[D]ue care" under the FTCA " 'implies at least some minimal concern for the rights of others.' " *Myers & Myers, Inc. v. U.S. Postal Serv.*, 527 F.2d 1252, 1262 (2d Cir. 1975) (quoting *Hatahley*

*v. United States*, 351 U.S. 173, 181 (1956)); *see Hydrogen Tech. Corp. v. United States*, 831 F. 2d 1155, 1161 (1st Cir. 1987) (the standard for due care is "one of reasonableness").

The government officers' conduct flunks this low bar. Plaintiffs were detained in cramped and frigid cells. Compl. ¶¶ 62, 73, 91, 92, 118. For food, they were given cold soup or dry ramen noodles. *Id.* ¶¶ 62, 92, 118, 137. They were given no clean water to drink. *Id.* ¶¶ 62, 92, 118. When Plaintiffs complained, officers taunted them. *Id.* ¶¶ 92, 137. Some Plaintiffs were forced to take unidentified pills; others were subjected to humiliating and non-consensual vaginal exams. *Id.* ¶¶ 76, 97, 143.

Worse, officers separated Plaintiff-Parents from their children in insensitive and traumatic ways. Some children were taken without explanation; others were ripped from their parents' bodies. *See supra* pp. 4-5. Officers ignored Plaintiff-Parents' pleas for information about their children's whereabouts. Officers told one Plaintiff that her son would be put up for adoption. Compl. ¶ 67. Others told Plaintiffs to forget about their sons. *Id.* ¶¶ 67, 94. And when they finally were able to connect with one another, officers provided only minimal opportunities for the Plaintiff families to communicate. *Id.* ¶¶ 71, 74-79, 94, 102-105, 127-128.

This is not due care. To the contrary, the government officials executing the Family Separation Policy acted with the deliberate intent of humiliating and traumatizing Plaintiffs in an effort to deter future migration. So even if a statute or regulation *did* authorize Plaintiffs' separations, the due care exception does not bar Plaintiffs' claims.[7]

Notably, Defendant does not even attempt to argue that it exercised due care when it separated Plaintiffs. Because Defendant has the burden on this point, that failure alone warrants denying its motion to dismiss. *See Fuentes-Ortega*, 2022 WL 16924223, at *4 (in family-separation case, concluding that the government failed to "show[ ] that the due care exception applies" because "[t]he government does not address this issue,

---

[7] At the very least, whether the government exercised due care is a question of fact not appropriately resolved at the motion to dismiss stage. *See, e.g.*, *Moher v. United States*, 875 F. Supp. 2d 739 (W.D. Mich. 2012) (denying motion to dismiss FTCA claims because factual issue existed as to whether the use of force against plaintiff was reasonable).

1  much less show that its agents exercised due care in their treatment of Plaintiffs"); *B.A.D.J.*,

2  2022 WL 11631016, at \*4 (similar).

3  Rather, Defendant appears to argue that "due care" is not actually part of the due

4  care exception, and that the exception is instead satisfied "where a government employee's

5  actions are authorized by statute." Mot. 23 (citing *Borquez v. United States*, 773 F.2d 1050,

6  1052-53 (9th Cir. 1985)). Courts in this District have rejected *Borquez* in cases like this

7  one. As *A.P.F.* explained, *Borquez* concerned "a challenge to the statutory authority of the

8  government" to transfer responsibility of a dam to a private corporation. 492 F. Supp 3d at

9  995 n.3 (quoting *Borquez*, 773 F.2d at 1052). This was "a type of challenge the exception

10  was designed to prohibit." *Id.* "Here, Plaintiffs are not challenging a statute's grant of

11  authority to the government to separate Plaintiffs; they are seeking damages for harm caused

12  by the execution of an executive policy. *Borquez* therefore does not apply." *Id.*

13  This Court should follow *A.P.F.*—and the settled consensus in this Circuit—and

14  apply the two-part due care test discussed above. *See supra* p. 18; *see also B.A.D.J.*, 2022

15  WL 11631016, at \*4 (collecting cases). And it should then hold that the due care exception

16  does not bar Plaintiffs' claims.

17  **III.   Plaintiffs' Tort Claims Satisfy The Private-Person-Analogue Inquiry.**

18  Plaintiffs' tort claims satisfy the FTCA's broad private-person-analogue

19  requirement, which provides that the United States is liable "in the same manner and to the

20  same extent as a private individual under like circumstances." 28 U.S.C. § 2674. As the

21  Supreme Court has explained, "the words 'like circumstances' do not restrict a court's

22  inquiry to the *same circumstances*, but require it to look further afield." *United States v.*

23  *Olson*, 546 U.S. 43, 46 (2005) (quoting *Indian Towing Co. v. United States*, 350 U.S. 61,

24  64 (1955)). The goal is "to find the most reasonable analogy." *Dugard v. United States*,

25  835 F.3d 915, 919 (9th Cir. 2016) (quoting *LaBarge v. Mariposa Cty.*, 798 F.2d 364, 367

26  (9th Cir. 1986)). The plaintiff need not identify a private analogue that is "exactly on point."

27  *Firebaugh Canal Water Dist. v. United States*, 712 F.3d 1296, 1303 (9th Cir. 2013).

28

Applying these rules, courts in this District have universally held that claims for intentional infliction of emotional distress ("IIED"), negligence, and loss of consortium have reasonable private analogues under like circumstances.

Courts in this District have found private analogues for IIED in family-separation cases based on Arizona case law recognizing such claims where parents were separated from their children. *E.g.*, *F.R.*, 2022 WL 2905040, at *3; *see Pankratz v. Willis*, 744 P.2d 1182, 1189 (Ariz. Ct. App. 1987) (recognizing IIED claim where one parent forcibly separated child from the other parent); *Martinez v. United States*, No. CV-13-00955-TUC-CKJ (LAB), 2018 WL 3359562, at *10-12 (D. Ariz. July 10, 2018) (same, where border patrol agents acted with malice in threatening to separate family during interrogation).

Courts in this District have recognized a private analogue for negligence in this context under Arizona's civil-liability provision for private nursing-home employees, as both nursing-home employees and immigration officials "are tasked with the care and custody of those they detain, and owe detainees at least a minimal level of care." *E.g.*, *C.M.*, 2020 WL 1698191, at *2 (citing *Estate of Smith v. Shartle*, No. CV-18-00323-TUC-RCC, 2020 WL 1158552, at *1 (D. Ariz. Mar. 10, 2020)).

And courts in this District have recognized that "Arizona law also awards damages for the loss of a child's consortium when a caretaker's actions cause 'significant interference with the normal relationship between parent and child.' " *E.g.*, *A.P.F.*, 492 F. Supp. 3d at 995 (quoting *Bickler v. Senior Lifestyle Corp.*, No. CV09-00726-PHX-DGC, 2010 WL 2292985, at *6 (D. Ariz. June 8, 2010)).

Courts have continually reaffirmed these holdings on analogous facts to this case. *E.S.M.*, 2022 WL 11729644, at *2-3; *B.A.D.J.*, 2022 WL 11631016, at *4-5; *A.I.I.L.*, 2022 WL 992543, at *5-8; *Fuentes-Ortega*, 2022 WL 16924223, at *4-5.[8]

---

[8] Defendant attempts to distinguish these cases in a short footnote arguing that "a nursing home's duty to safeguard against neglect wholly differs from the" circumstances at issue here. Mot. 25 n.5. That conclusory assertion—unsupported by any citation—is not a proper method to present that argument. *Cf. Hilao v. Est. of Marcos*, 103 F.3d 767, 778 (9th Cir. 1996) ("The summary mention of an issue in a footnote, without reasoning in support of the

Defendant's baseless assertion that no private-person analogue exists "[b]ecause only the federal government has the authority to enforce federal criminal and immigration laws and make detention determinations" falters at every step.  Mot. 24.  This case does not involve a circumstance in which the federal government was "enforc[ing] federal criminal and immigration laws"; it involves a case where federal officers, acting pursuant to an executive policy, separated and detained families in violation of their constitutional rights. And contrary to Defendant's suggestion, it is well settled that the United States can be held liable for actions over which the government has exclusive authority.  *See, e.g.*, *Indian Towing*, 350 U.S. at 67-68; *Tekle v. United States*, 511 F.3d 839 (9th Cir. 2007).  For good reason; because "[a]ll Government activity is inescapably 'uniquely governmental' in that it is performed by the Government," an exception insulating the government from FTCA liability for negligent performance of "uniquely governmental functions," "would threaten to swallow the" FTCA's waiver of sovereign immunity whole.  *Liranzo v. United States*, 690 F.3d 78, 94 (2d Cir. 2012) (quoting *Indian Towing*, 350 U.S. at 67).

Just as the United States can be liable for the Coast Guard's actions, *Indian Towing*, 350 U.S. at 69-70, so too can it be liable for governmental actions by immigration officials. For example, in *Xue Lu v. Powell*, the Ninth Circuit found private analogues for the plaintiff's IIED and interference with civil rights claims against an immigration officer who threated to deny her asylum, unless she paid the officer money or provided him with sexual favors.  621 F.3d 944, 950 (9th Cir. 2010).  The Second Circuit in *Liranzo* likewise found a private analogue where an immigration officer erroneously detained the plaintiff in ICE custody for about four months.  690 F.3d at 82, 94-97.

None of the three cases Defendant cites suggest otherwise.  Each involved quasi-adjudicative actions that private persons cannot engage in.  *See Elgamal v. Bernacke,* 714 F. App'x 741, 742 (9th Cir. 2018) ("negligent denial of an immigration status adjustment application"); *Elgamal v. United States,* No. 13-00967, 2015 WL 13648070, at *5 (D. Ariz.

---

appellant's argument, is insufficient to raise the issue on appeal.").  It is also wrong, for the reasons *C.M.* and other courts have explained.

July 8, 2015) (same, and delay in reaching decision); *Bhuiyan v. United States,* 772 F. App'x 564, 565 (9th Cir. 2019) ("withdrawal of immigration benefits").  But this case involves IIED, negligence, and loss of consortium claims stemming from Defendant's unprecedented decision to separate parents and children under an illegal executive policy, and for which a private analogue exists.[9]  Defendants' motion should be denied.

## IV.    The Complaint Does Not Allege Systemic Tort Claims.

Defendant's "systemic tort" argument has been soundly rejected in five recent family-separation cases, including three cases from this District.  *See Fuentes-Ortega*, 2022 WL 16924223, at *5; *E.S.M.*, 2022 WL 11729644, at *2; *F.R.*, 2022 WL 2905040, at *3-4; *A.F.P.*, 2022 WL 2704570, at *18; *Wilbur P.G.*, 2022 WL 3024319, at *6.  As those cases explained, this argument is "unpersuasive" and lacks a "sound legal basis."  *A.F.P.*, 2022 WL 2704570, at *18.  Defendant's failure to cite—let alone distinguish—these decisions betrays the weakness in its position.

The premise of Defendant's systemic tort argument is that an FTCA plaintiff cannot "seek to hold the entire United States government or an entire agency directly liable."  Mot. 25 (citing *Lee v. United States*, No. CV 19-08051-PCT-DLR (DMF), 2020 WL 6573258, at *6-7 (D. Ariz. Sept. 18, 2020)).  Defendant's reliance on *Lee* "misses the mark."  *Fuentes-Ortega*, 2022 WL 16924223, at *5.  *Lee* involved a suit against the government "for its own alleged negligence or based on its purported vicarious liability as an employer," and the complaint there failed to identify *any* "alleged acts or omissions of specific federal employees for which the Government could be held liable 'if a private person' under Arizona law."  *Lee*, 2020 WL 6573258, at *5.

Here, unlike in *Lee*, Plaintiffs allege wrongdoing by specific officials of the United States, not the government as a whole.  Each count in the Complaint specifically alleges that "Defendant and the federal officials and officers referenced above" violated Plaintiffs'

---

[9] Because Plaintiffs' claims arise under state tort law—not the Constitution—IRLI's constitutional tort argument fails.  IRLI Amicus Br. 6-7; *see A.I.I.L.*, 2022 WL 992543, at *8.

rights.  Compl. ¶¶ 159, 163, 168.  The Complaint also alleges numerous wrongful actions by individual officers acting within the scope of their employment.  *See id.* ¶ 17.  For example, the Complaint alleges that certain federal officials designed the Family Separation Policy, which resulted in Plaintiffs' separations, *e.g.*, *id.* ¶¶ 31, 39, 60, 138; that "officers subjected detained families to increasingly inhumane and unsafe conditions," *e.g.*, *id.* ¶¶ 39, 92, 118, 137; that "officers" yelled at Plaintiffs and attempted to force them to sign documents they did not understand, *e.g.*, *id.* ¶¶ 63-64, 98, 117, 119, 144; that "officers" forcibly separated Plaintiff-Parents and Plaintiff-Children and refused to provide them with an explanation or information about one another's whereabouts, *e.g.*, *id.* ¶¶ 66-67, 93-94, 120-121, 138-139, 141; that "officials" failed to correctly enter information about certain Plaintiffs into their systems, further delaying reunification, *id.* ¶ 70; and that "officers" threatened Plaintiffs with deportation or delayed reunification, including in order to compel their compliance, *e.g.*, *id.* ¶¶ 64, 74, 98-99, 144.

To be sure, the Complaint also refers at times to the "government."  Mot. 26.  But dismissing an FTCA complaint on that basis "would make little sense given that the FTCA requires a plaintiff to sue the United States itself."  *Wilbur P.G.*, 2022 WL 3024319, at *6 (internal quotation marks and brackets omitted).  Because they have not yet had the benefit of discovery, Plaintiffs' Complaint also references "unidentified" individuals at points. Mot. 26.  That is not an appropriate basis for dismissal, either.  To hold otherwise "would put [plaintiffs] in a catch-22: they can only identify the individual employees who wronged them through discovery, but they are blocked from discovery because they cannot identify the individual employees who wronged them."  *E.S.M.*, 2022 WL 11729644, at *2; *accord, e.g.*, *A.F.P.*, 2022 WL 2704570, at *18; *Wilbur P.G.*, 2022 WL 3024319, at *6.

To the extent the Complaint "assert[s] claims based upon the actions of individual government employees," this Court has jurisdiction.  *E.S.M.*, 2022 WL 11729644, at *2.

**V.    Plaintiffs Are Not Seeking Relief Against Independent Contractors.**

Defendant argues that claims brought against independent contractors working for ORR must be dismissed.  Mot. 26-27.  But Plaintiffs are challenging the government's

conduct in exposing children to abuse in ORR custody—not the government's role in selecting or supervising ORR contractors, or the actions of independent contractors employed by ORR.  None of Plaintiffs' claims are based solely on detention in ORR custody or a theory of vicarious liability.  Rather, Plaintiffs' claims are based, at least in part, on the government's conduct of separating parents from their children.  But for that unlawful policy and the government's tortious conduct, Plaintiff-Children would not have been in ORR custody, and the harms Plaintiff-Children suffered in ORR custody would not have occurred.

*A.P.F.* rejected an independent-contractor argument on analogous facts:

> All three of Plaintiffs' causes of action—IIED, negligence, and loss of child's consortium—arise from the government's separation of Plaintiff families. "The independent contractor exception . . . has no bearing on the United States' FTCA liability for its own acts or omissions."  To the extent the United States argues that the contractors caused Plaintiffs' harm, and not the government, this raises a fact-intensive issue inappropriate for resolution at this stage.

*A.P.F.*, 492 F.Supp.3d at 998 (quoting *Edison v. United States*, 822 F.3d 510, 518 (9th Cir. 2016)).  In so holding, *A.P.F.* also distinguished Defendant's principal authority, *Walding v. United States*, 955 F. Supp. 2d 759 (W.D. Tex. 2013).  *See* Mot. 26-28.  The *Walding* plaintiffs sued on theory of negligent supervision and vicarious liability, and their claims were "untraceable to an overarching executive policy."  *A.P.F.*, 492 F.Supp.3d at 998.  By contrast, in *A.P.F.* and this case, "Plaintiffs seek recovery for harm caused by the government's policy and practice of separating families."  *Id.*

Because the Complaint alleges that Plaintiffs' harm in ORR custody "was proximately caused by the federal government's family-separation policy," Defendant's independent-contractor argument fails.  *Id.*; *accord A.F.P.*, 2022 WL 2704570, at *17-18.

## CONCLUSION

For the foregoing reasons, the Court should deny Defendant's motion.

RESPECTFULLY SUBMITTED this 17th day of January, 2023.

HOGAN LOVELLS US LLP

By: *s/ Danielle Desaulniers Stempel*

Justin W. Bernick*
Danielle Desaulniers Stempel*
Michael J. West*
Dana A. Raphael*
Melissa Giangrande*
HOGAN LOVELLS US LLP
Columbia Square
555 Thirteenth Street, NW
Washington, DC 20004

Cory Szczepanik*
HOGAN LOVELLS US LLP
1601 Wewatta Street, Suite 900
Denver, CO 80202

Tamara F. Goodlette*
Vanessa Rivas-Bernardy*
REFUGEE AND IMMIGRANT CENTER FOR
EDUCATION AND LEGAL SERVICES (RAICES)
5121 Crestway Drive, Suite 105
San Antonio, TX 78239

Gary Bendinger
Katie Derrig
Allison Whitehill
LEWIS ROCA ROTHGERBER CHRISTIE LLP
201 East Washington Street, Suite 1200
Phoenix, AZ 85004
*Attorneys for Plaintiffs*

(*Admitted pro hac vice)

**CERTIFICATE OF SERVICE**

I hereby certify that on January 17, 2023, the foregoing was electronically transmitted to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants in this case:

Gary M. Restaino
United States Attorney
District of Arizona
Laurence G. Tinsley, Jr.
LEAD ATTORNEY TO BE NOTICED
Assistant U.S. Attorney
Arizona State Bar No. 012581
Two Renaissance Square
40 North Central Avenue, Suite 1800
Phoenix, Arizona 85004-4449
Telephone:  (602) 514-7500
Civil Fax:  (602) 514-7760
Main Fax: (602) 514-7693
Email:  Laurence.tinsley@usdoj.gov
*Attorneys for Defendant*

Attorneys for Plaintiffs

s/Danielle Desaulniers Stempel